1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEM KENNETH UNDERWOOD, ) | 1:07cv1564 DLB |
| ) | |
| ) | |
| Plaintiff, ) | ORDER REGARDING PLAINTIFF'S |
| ) | SOCIAL SECURITY COMPLAINT |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## **BACKGROUND**

Plaintiff Clem Kenneth Underwood ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On December 6, 2007, the Honorable Anthony W. Ishii reassigned the case to the Honorable Gary S. Austin.  On December 24, 2008, the action was reassigned to the undersigned for all purposes.

## FACTS AND PRIOR PROCEEDINGS[2]

On March 21, 2001, Plaintiff filed his application for supplemental security income, alleging disability since September 1, 1990, due to obesity, depression, asthma, a congenital right hip deformity, severe knee damage, a learning disability and short-term memory damage.  AR 182-183, 212-221.  Ultimately, Plaintiff's claim was denied by the Administrative Law Judge ("ALJ") and the Appeals Council.  AR 6-9, 12-20.

Plaintiff filed an action in this Court on August 26, 2004.  The Court issued an order in favor of Plaintiff remanding the case for further proceedings on May 25, 2006.  AR 642-677.  The Appeals Council issued its order vacating the ALJ's decision and remanding the claim for further action.  AR 678-681.[3]

On June 27, 2007, ALJ James Berry held a hearing pursuant to the order of remand.  AR 978-999.  On July 9, 2007, he issued his decision denying Plaintiff's claim for benefits.  AR 610-622.  The Appeals Council denied review on September 9, 2007.  AR 597-600.

Hearing Testimony

ALJ Berry held a hearing on June 27, 2007, in Fresno, California.  Plaintiff appeared with his attorney, Robert Christenson.  Vocational expert ("VE") Jose Chaparro also appeared and testified.  AR 978.

Plaintiff testified that he was 33 years old at the time of the hearing.  He was five feet, seven inches tall and weighed 300 pounds.  AR 982.  He completed the ninth grade, with special education classes, and has difficulty reading and writing.  AR 982.  Plaintiff has not worked in the last 15 years, except for working for about a month in 2005 at a pie factory.  AR 983-984.  He has been in and out of jail.  AR 983.

Plaintiff explained that he could not work because his back and hips hurt constantly.  He was born with a deformity in his right hip.  AR 984.  Plaintiff testified that the pain in his right

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] In the order remanding the claim, the Appeals Council orders the ALJ to associate Plaintiff's subsequent application, filed on September 15, 2004, with the remanded claim.  AR 680.

hip and back and is a constant, stabbing pain. AR 986. Plaintiff also has non-insulin dependent diabetes and hepatitis C. He has not had treatment for his hepatitis C because he was using drugs. His diabetes is controlled by diet. AR 984-985. He has now been sober for about six months. AR 985. Plaintiff also testified that he was depressed sometimes, but "not real bad." AR 986.

Plaintiff believed that he has a shorter attention span because he does not sleep well at night and is tired during the day. AR 987-988. He thought that he could lift five, maybe ten pounds, but could not do it for two to three hours a day. He could stand five or ten minutes at a time and thought he could stand for 30 to 40 minutes total. He could sit for about 30 to 40 minutes a time and could sit for a couple of hours total. He has to lay down and take breaks twice during the day. AR 987. He was currently taking medication for high-blood pressure and Motrin. AR 989.

Plaintiff was on light duty in prison, which meant that he "really [didn't] do nothing." AR 989. He was also on the top bunk, though he is trying to get moved. AR 989.

When questioned by the ALJ, Plaintiff testified that the Motrin helped take the edge off the pain a little and despite his blood pressure medication, his blood pressure was still high. AR 990. Plaintiff refused his blood pressure medication last month, while incarcerated, because he was trying to go to a fire camp. AR 990. He wanted to try and do something and thought they got out earlier. AR 990. Plaintiff explained that there are multiple jobs at fire camp, including fire fighters, visitor workers, kitchen workers and trash collectors. He was going to do whatever position he was assigned. AR 991. In the end, he didn't apply because his counselor told him he was ineligible because of his hip and medication. He was in prison for burglary, check fraud, possession of stolen property and attempted burglary. AR 991.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and past relevant work. This person retains the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally, 10 pounds frequently, to stand and walk two hours each and to sit for eight hours. This person could occasionally push and pull with the non-dominant left upper extremity, but could not balance, climb, kneel, crouch, crawl or stoop. This person

could perform simple, repetitive tasks and maintain attention, concentration, persistence and pace.  This person could relate and interact with others, adapt to usual changes in the work setting and adhere to safety rules.  The VE testified that this person could not perform Plaintiff's past relevant work in the pie factory, but could perform work at the sedentary level.  He identified the position of almond blancher (200 in California, 800 nationally), bench hand ("couple hundred" in California, about 1,200 nationally), and final assembler (100 to 200 in California, about 1,200 nationally).  AR 994.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift five to ten pounds, for less than one-third of the day.  This person could stand for 30 to 40 minutes and sit for two hours, maximum.  This person could maintain concentration for 20 to 30 minutes at a time, but must take two breaks per day for up to two hours each.  The VE responded that this person could not perform Plaintiff's past work or any other jobs in the national economy.  AR 995.

Plaintiff's attorney asked the VE about the first hypothetical, inquiring about the inability to kneel, crouch, crawl and stoop.  The VE responded that none of the positions he identified required an ability to stoop.  AR 996.

Plaintiff's attorney also asked the VE a separate hypothetical question.  He asked the VE to assume that this person could lift ten pounds frequently, twenty pounds occasionally, but could stand and walk less than two hours a day in combination.  This person could sit for six hours but cannot stoop.  The VE testified that this describes sedentary work, but in light of SSR 96-9p, the complete limitation in stooping would preclude work.  AR 997.

Plaintiff's attorney also asked the VE to assume a person who could lift ten pounds occasionally and frequently, but could stand and/or walk for less than two house in an eight hour day and sit for less than six hours in an eight hour day.  The VE testified that this person could not perform any work.  AR 997.

For the final hypothetical, Plaintiff's attorney asked the VE to assume a person with an RFC for light work who could not perform work activities on a consistent basis, could not engage in work activities without special or additional supervision, and who would have

1   difficulty interacting with supervisors, coworkers or the public.  This person would also have

2   difficulty coping with the stress encountered in a normally competitive workplace.  The VE

3   testified that this person could not perform any work.  AR 998.

4        Medical Record

5        Plaintiff was in a motor vehicle accident in August 1989.  He suffered internal bleeding

6   and lacerations of both legs, and underwent corrective surgery on his knees.  AR 342-375.

7        On June 2, 1999, Plaintiff saw R. Roy Fratini, PhD., for a psychological evaluation.  He

8   was diagnosed with a mood disorder, not otherwise specified, alcohol abuse in remission for

9   three months, amphetamine abuse in remission for three months, and borderline intellectual

10   functioning.  AR 436-439.

11        An October 24, 2000, notation from Plaintiff's 2000 incarceration indicates that Plaintiff

12   should not be assigned to a job requiring him to lift more than 15 pounds or stand for more than

13   one hour at a time.  AR 448.

14        On August 9, 2001, Plaintiff saw Frederick R. Young, M.D., for complaints of pain in his

15   right hip and right knee since childhood.  On physical examination, Plaintiff exceeded the scale's

16   limit of 350 pounds.  Range of motion in his back was normal considering his size.  Range of

17   motion in his hips and knees was also full.  There was no instability and his sensation was intact.

18   Dr. Young opined that besides Plaintiff's obesity, "he [is] fine," and the only restrictions would

19   be due to his weight.  AR 524-525.

20        Plaintiff saw Michael S. Barnett, M.D., for a psychiatric evaluation on August 23, 2001.

21   His chief complaint was that he didn't get along well with people.  He reported that he's afraid

22   that "people are trying to boss him around and feels he has to get away from them or hit them."

23   Plaintiff reported that he dropped out of high school in the 12th grade and denied prior childhood

24   physical or sexual abuse.  On mental status examination, his mood was depressed and his affect

25   was blunted.  He was oriented times three.  He could not perform serial threes and was very slow.

26   His recent memory was intact.  Dr. Barnett concluded that Plaintiff had a long-term history of

27   substance abuse and was mentally retarded with a poor education.  He was regressed socially and

28   functioning at a very low level.  Dr. Barnett diagnosed depressive disorder, not otherwise

specified, polysubstance abuse in remission, and mental retardation, severity unspecified.  Given his impaired mental status examination and significant mood disorder, Dr. Barnett opined that Plaintiff would struggle to work.  He would have no difficulty understanding, remembering and carrying out simple one or two step job instructions.  However, he would be unable to work regularly or perform work activities on a consistent basis, though he has no psychiatric symptoms that would interfere with the completion of a normal work day or work week.  Plaintiff would need additional supervision, have a difficult time interacting with supervisors, coworkers or the public and have difficulty coping with usual stressors in the workplace.  AR 526-528.

        On October 22, 2001, State Agency physician James Peery, M.D., completed a Physical Residual Functional Capacity Assessment.  He opined that Plaintiff could lift and carry twenty pounds occasionally, ten pounds frequently, stand and/or walk about six hours, and sit for about six hours.  He could frequently climb ramps and stairs, but never ladders, ropes or scaffolding.  He could frequently balance, kneel and crawl, and occasionally stoop and crouch.  This opinion was affirmed on March 18, 2002.  AR 133-140.

        On October 24, 2001, State Agency physician Evangeline Murillo, M.D., completed a Mental Residual Functional Capacity Assessment.  She opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions, and in his ability to work in coordination with, or proximity to, others without being distracted.  He was not significantly limited in any other area and Dr. Murillo opined that Plaintiff was capable of understanding and remembering  very simple, one to two step tasks.  AR 141-149.  This opinion was affirmed on April 4, 2002.  AR 149.

        Also on October 24, 2001, Dr. Murillo completed a Psychiatric Review Technique form.  She believed that Plaintiff had the medical impairments of depression, low IQ and mental retardation, though he had no deficits in adaptive functioning.  In assessing the degree of his limitations, she opined that he had mild difficulties in maintaining concentration, persistence and pace.  AR 117-130.

        On March 14, 2002, Plaintiff began treating with C. Nguyen, M.D.  He complained of pain to both lower legs for approximately three weeks. Plaintiff had a history of drug abuse but

reported that he had not used IV drugs for two years.  He had been in prison several times between 1997-2001.  On examination, Plaintiff was morbidly obese (over 400 pounds) and had surgical scars on both knees.  He diagnosed diabetes mellitus, type two, and obesity.  AR 861.

Plaintiff saw Dr. Nguyen again on April 25, 2002.  He was taking Tylenol #3 but reported that it was not helping.  Plaintiff also reported that he was not sleeping well because of the pain in his legs.  On examination, neither lower leg showed edema or calf muscle tenderness.  AR 858.

On May 16, 2002, Plaintiff returned to Dr. Nguyen and reported a history of asthma since childhood.  He stated that his asthma was stable and he did not use inhalers.  AR 537.

On June 24, 2002, Plaintiff had x-rays of his hips and knees taken.  He had a mild deformity of the right femoral head, compatible with avascular necrosis/Legg-Perthes disease, most likely chronic.  There was no evidence of any significant abnormality in either knee.  AR 856.

On August 5, 2002, Dr. Nguyen completed a Medical Source Statement form.  He opined that Plaintiff could lift and carry ten pounds occasionally and frequently, stand and/or walk for less than two hours in an eight hour day, and sit for less than six hours in an eight hour day.  These limitations were supported by pain in Plaintiff's right hip.  Plaintiff could not use either hand for simple grasping, pushing/pulling or fine manipulation.  He could frequently reach, and occasionally bend, climb and crouch.  He could never squat, crawl, stoop or kneel.  Plaintiff could not tolerate exposure to unprotected heights or exposure to dust, fumes and gases.  Dr. Nguyen classified Plaintiff's pain as moderate, meaning that it would cause a marked handicap in his performance.  His pain would often interfere with attention and concentration.  Dr. Nguyen opined that these restrictions became effective in July 2000.  AR 530-533.

Plaintiff underwent visual testing on December 5, 2002.  The examination revealed no signs of diabetic retinopathy.  AR 587.

On December 26, 2002, Plaintiff saw Dr. Nguyen and complained of hip pain for the past month, though he had been having pain in both hips, on and off, for quite a while, as well as pain in both knees.  Dr. Nguyen stated that Plaintiff "knew that the pain in the knees is related to his

7

1  weight," which was 371 pounds in July.  On examination, he had mild tenderness in the right hip.

2  Plaintiff was given Darvocet.  AR 847.

3  _____Plaintiff saw Dr. Young again on April 18, 2003, complaining of pain in his legs, back

4  and hips.  He was taking Tylenol with codeine and Darvocet for pain.  Examination showed that

5  Plaintiff was grossly obese, but had relatively normal strength, range of motion and reflexes.  Dr.

6  Young opined that Plaintiff's obesity would preclude some activities, but that he would be able

7  to perform light (or desk-type) duties.  AR 549-550.  On a Medical Source Statement completed

8  on April 1, 2003, Dr. Young opined that Plaintiff could occasionally lift ten to twenty pounds,

9  ten pounds frequently, stand and/or walk for less than two hours in an eight hour day and sit

10 without limitation.  He was limited in pushing/pulling with his lower extremities and could never

11 climb, balance, kneel, crouch, crawl or stoop.  AR 551-554.

12 _____On May 7, 2003, Dr. Nguyen saw Plaintiff and noted that he was doing well and his

13 weight had dropped about 25 pounds to 327 pounds.  AR 842.

14 _____Plaintiff returned to Dr. Nguyen on November 4, 2003, complaining that he was

15 depressed because he could not find a job in the past few months.  He also wanted his welfare

16 form filled out based on his severe arthritis in his knee joint and hip secondary to a motor vehicle

17 accident.  Plaintiff was given Zoloft for his depression and Dr. Nguyen filled out his forms.  AR

18 838.

19 _____Plaintiff saw Dr. Nguyen on November 12, 2003.  Plaintiff was on the maximum dose of

20 Glucophage, but was doing well.  He was referred to mental health and was waiting to see a

21 psychiatrist.  Dr. Nguyen diagnosed type two diabetes, obesity, chronic hepatitis B and C and

22 hypertension.  Among other things, Plaintiff was advised to lose weight and follow a low-salt

23 diet.  AR 836.

24 _____Beginning on November 24, 2003, Plaintiff received group treatment through Tulare

25 County Health and Human Services.  On mental status examination, he was oriented times four

26 and had immediate recall.  His mood was depressed.  Plaintiff did not return for any additional

27 appointments and was discharged on May 5, 2004.  At the time of discharge, his diagnosis was

28

major depressive disorder, recurrent and mild, polysubstance dependency and alcohol dependency. His GAF was 50 and his condition at discharge was unchanged. AR 817-829.

Plaintiff returned to Dr. Nguyen on February 12, 2004. He noted that Plaintiff was going to have interferon therapy. On examination, Plaintiff was morbidly obese and had mild tenderness on the left side of his abdomen. He was instructed to continue with his medications. AR 834.

Plaintiff saw Dr. Nguyen on August 27, 2004. He noted that Plaintiff did not follow up with his interferon therapy or his ophthalmology appointment. Dr. Nguyen diagnosed diabetes mellitus type two, obesity and chronic hepatitis B and C. AR 832.

Plaintiff returned to Dr. Nguyen on November 5, 2004. He refused to be weighed. Dr. Nguyen refilled his Darvocet prescription and recommended an "1800 calorie ADA diet." AR 929.

On December 28, 2004, Plaintiff underwent a consultive examination performed by Mohammed Quadeer, M.D., in connection with a disability application in Oklahoma. Plaintiff reported that he never worked and was addicted to illicit drugs, though he had been clean for four years. He also reported that he completed ninth grade and had a learning disability. Plaintiff complained of pain in the right hip and back, and reported that he was taking Elavil for depression. On examination, Plaintiff was morbidly obese and in no acute distress. His knees showed no effusion or edema and were stable in all ranges of motion. His cervical spine was non-tender with full range of motion. Plaintiff's lumbar spine was tender at L4-L5 with limited range of motion in all planes. Straight leg raises were negative bilaterally. Gait was normal. On mental status examination, he was alert and oriented and his recent and remote memories were intact. He did not appear to have any cognitive deficiencies. AR 869-871.

Dr. Quadeer diagnosed Plaintiff with morbid obesity, pain in the hip probably due to degenerative arthritis of the right hip with slightly limited movements, a history of hepatitis C, history of substance abuse, non-insulin-dependent diabetes, not under good control, hypertension under good control, and depression. AR 872.

1    _____On March 15, 2005, Plaintiff saw Leslie H. Lessenger, PhD., for a psychological

2    evaluation.  Plaintiff reported that his friend recommended that he file for disability because he is

3    unable to work, and when he does get a job, it lasts only about a week.  He also reported

4    difficulty with reading, writing and spelling.  Plaintiff indicated that he could cook, wash dishes,

5    do laundry, work in the yard and drive a car.  He watches television and plays video games.  On

6    mental status examination, Plaintiff was oriented to person, time, place and the nature of his

7    situation.  There were no symptoms of a thought disorder.  Plaintiff reported that he needs

8    medication to sleep and has nightmares about mostly about prison.  He becomes anxious when

9    he's around a lot of people and has thoughts of suicide.  Testing revealed performance in the low

10   to average range.  AR 877-879.

11   Dr. Lessenger diagnosed dysthymic disorder, history of substance abuse, and

12   psychological stressors (history of emotional and physical abuse, incarceration).  His current

13   GAF was 60.  She indicated that Plaintiff functions in the low average range of intellectual

14   ability, and his memory skills are consistent with his intellectual ability, with possible mild

15   attention deficit.  His academic skills were at the fourth to eighth grade level.  His depression

16   appeared related to his life situation.  His ability to perform physical labor was likely limited by

17   his obesity and reported pain.  There were no cognitive limitations to his ability to function in an

18   entry level position.  AR 879-880.

19   On March 29, 2005, State Agency physician Murray Mitts, M.D., completed a Physical

20   Residual Functional Capacity Assessment.  He opined that Plaintiff could lift and carry twenty

21   pounds occasionally, ten pounds frequently, stand and/or walk about six hours, and sit for about

22   six hours.  He could frequently balance, kneel and crawl, and occasionally climb, stoop and

23   crouch.  This opinion was affirmed on June 20, 2005.  AR 888-895.

24   _____Also on March 29, 2005, State Agency physician Evangeline Murillo, M.D., completed a

25   Mental Residual Functional Capacity Assessment.  She opined that Plaintiff was moderately

26   limited in his ability to understand, remember and carry out detailed instructions.  He was not

27   significantly limited in any other area and Dr. Murillo opined that Plaintiff could perform simple,

28

routine tasks as well as less complex tasks.  He could also adapt and interact appropriately in a work environment when performing simple and less complex tasks.  AR 896-898.

In rating his mental impairments, Dr. Murillo found that Plaintiff was mildly limited in activities of daily living, maintaining social functioning and maintaining concentration, persistence and pace.  AR 909.

On January 8, 2007, the California Department of Corrections ("CDC") noted that he was medically eligible for full duty.  AR 950.  Pursuant to a mental health screening on January 10, 2007, he was cleared for general population.  AR 955.

On May 3, 2007, Plaintiff completed an initial health screening for the CDC.  He denied being under a doctor's care, taking medications, having any physical deformity or disability and receiving mental health treatment.  AR 931.  He refused the medication he had been taking (Lotensin, Naprosyn and Elavil).  AR 934.  He also refused treatment for a psychiatric problem, a seizure problem, an asthma problem, diabetes and high blood pressure.  AR 935.

ALJ's Findings

ALJ Berry determined that Plaintiff had the severe impairments of morbid obesity, congenital right hip deformity, drug and alcohol dependency in partial remission, and a depressive disorder, not otherwise specified.  After evaluating the medical evidence, he found that Plaintiff retained the RFC to perform sedentary work with additional non-exertional limitations.  The ALJ determined that Plaintiff did not have any past relevant work, but based on the testimony of the VE, he determined that Plaintiff could perform a significant number of jobs in the national economy.  AR 615-621.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

1   reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

2   401.  The record as a whole must be considered, weighing both the evidence that supports and

3   the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

4   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

5   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

6   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

7   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

8   substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

9   Cir. 1987).

10                                          **REVIEW**

11          In order to qualify for benefits, a claimant must establish that he is unable to engage in

12   substantial gainful activity due to a medically determinable physical or mental impairment which

13   has lasted or can be expected to last for a continuous period of not less than 12 months.  42

14   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

15   such severity that he is not only unable to do her previous work, but cannot, considering his age,

16   education, and work experience, engage in any other kind of substantial gainful work which

17   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

18   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

19   Cir. 1990).

20          In an effort to achieve uniformity of decisions, the Commissioner has promulgated

21   regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

22   C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ

23   found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

24   his disability; (2) has an impairment or a combination of impairments that is considered "severe"

25   (morbid obesity, congenital right hip deformity, drug and alcohol dependency in partial

26   remission, and a depressive disorder, not otherwise specified) based on the requirements in the

27   Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of

28   impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,

1   Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform a significant

2   number of jobs in the national economy.  AR 615-621.

3        In his complaint, Plaintiff alleges that the ALJ erred (1) in finding that a significant

4   number of jobs existed; (2) in rejecting all limitations imposed by Dr. Young; (3) in failing to

5   adopt Dr. Nguyen's opinion; (4) in failing to find his borderline intellectual functioning a severe

6   impairment; (5) in failing to properly apply SSR 96-6p; (6) in failing to adopt Dr. Barnett's

7   opinion; (7) in failing to adopt the VE testimony supported by the record; and (8) in finding

8   Plaintiff not credible.

9        Plaintiff also makes a brief, unsupported request that the Court reopen his April 1999

10  application because he was not represented by an attorney, suffers from a mental deficit and did

11  not how to appeal or what procedures to follow.  While the Court may review decisions not to

12  reopen a claim where there is a colorable claim of a due process violation, there is no decision to

13  review in Plaintiff's action because it does not appear he made such a request at the

14  administrative level.  Udd v. Massanari, 245 F.3d 1096, 1099 (9th Cir. 2001).  This request is

15  therefore denied.

16                              **DISCUSSION**

17  A.   Significant Number of Jobs

18       Plaintiff first argues that the number of positions identified by the VE does not constitute

19  a significant number of jobs.

20       Pursuant to the regulations, work exists "in the national economy when it exists in

21  significant numbers either in the region where [the claimant] live[s] or in several other regions of

22  the country."  20 C.F.R. § 416.966(b).

23       Here, in response to the hypothetical question that was ultimately adopted, the VE

24  identified the positions of almond blancher (200 in California, 800 nationally), bench hand (a

25  "couple hundred" in California, about 1,200 nationally), and final assembler (100 to 200 in

26  California, about 1,200 nationally).  AR 994.  Assuming a "couple hundred" equals 200, this

27  means that the VE identified 500-600 positions in California.

28

1    Even though the Ninth Circuit has never found a minimum number of jobs necessary to

2    constitute a significant number within the meaning of the Act, 500-600 positions does not meet

3    the requirement.  *Barker v. Secretary of Health & Human Servs.*, 882 F.2d 1474, 1478 (9th Cir.

4    1989) (finding that 1266 jobs in the Los Angeles/Orange County are were considered

5    significant); *see also Moncada v. Chater,* 60 F.3d 521, 524 (9th Cir. 1995); *Martinez v. Heckler,*

6    807 F.2d 771, 775 (9th Cir. 1986).  This is especially true where the Court is remanding on other

7    grounds, as discussed below.

8    Accordingly, the ALJ's finding that significant jobs existed was not free of legal error.

9    The remedy will be discussed at the end of this opinion.

10   B.    Dr. Young's Opinion

11   Next, Plaintiff contends that the ALJ failed in rejecting Dr. Young's April 1, 2003,

12   assessment of Plaintiff's abilities.  Since the ALJ adopted most of Dr. Young's limitations,

13   Plaintiff's argument involves only the rejected standing/walking limitations.

14   While the opinion of a treating physician is entitled to the most weight, the opinion of an

15   examining physician is entitled to a significant amount of weight as well.  *Pitzer v. Sullivan*, 908

16   F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler,* 753 F.2d 1450 (9th Cir.1984).  As is the case

17   with the opinion of a treating physician, the Commissioner must provide "clear and convincing"

18   reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer,* 908 F.2d at

19   506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if

20   contradicted by another doctor, can only be rejected for specific and legitimate reasons that are

21   supported by substantial evidence in the record.  *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th

22   Cir.1995).

23   Here, the ALJ found that Plaintiff retained the RFC to occasionally lift up to twenty

24   pounds, ten pounds frequently, sit for eight hours and stand or walk for two hours.  Plaintiff

25   could occasionally push and pull with his non-dominant left upper extremity and would be

26   unable to climb, balance, kneel, crouch, crawl or stoop.  He would be further limited to

27   performing simple, repetitive tasks.  AR 616.

28

1    The ALJ therefore adopted a majority of Dr. Young's limitations, and the only rejected

2    portion is the stand/walk limitations.

3    In formulating Plaintiff's RFC, the ALJ acknowledged that the primary issues involved

4    the impact of Plaintiff's obesity and hip impairment on his ability to sit and stand/walk.  AR 619.

5    He also recognized that there was a "variance of opinion among examining, treating and

6    reviewing physicians on these points."  AR 619.

7    Ultimately, the ALJ rejected the more restrictive standing/walking limitations in favor of

8    a finding that Plaintiff could stand/walk for two hours in an eight hour day.  As to Dr. Young's

9    April 2003 opinion, the ALJ explained that he gave it "some weight," but gave the specific

10    standing/walking limitation "limited weight."  While the ALJ need not believe everything a

11    physician sets forth, and may accept all, some, or none of the physician's opinions, he must still

12    set forth specific and legitimate reasons that are supported by substantial evidence for rejecting

13    Dr. Young's contradicted opinion.  *Magallanes*, 881 F.2d at 753-754.

14    The ALJ's reasons for rejecting Dr. Young's opinion do not meet this standard.  He first

15    noted that it was a "check-box statement."  AR 619.  Certainly, the ALJ is entitled to question a

16    check-the-box form such as the one Dr. Young completed.  *Magallenes v. Bowen*, 881 F.2d 747,

17    751 (9th Cir. 1989).  However, such doubt only attaches where the form is unsupported by

18    clinical findings.  Dr. Young completed the form after he examined Plaintiff once in 2001 and a

19    few weeks before he examined him again in 2003.  Although the prior examination was more

20    than a year and a half prior, the impairment that caused the limitation in Dr. Young's opinion,

21    Plaintiff's obesity, remained.  In August 2001, he stated that the only restrictions would be due to

22    Plaintiff's weight, which exceeded the scale's limit of 350 pounds.  AR 524-525.  On April 18,

23    2003, Plaintiff weighed 346 pounds.  Dr. Young again noted that Plaintiff's morbid obesity

24    would prevent some activities.  AR 550.  Dr. Young's opinion as to Plaintiff's abilities to stand

25    and/or walk were therefore supported by examinations both before and after he completed the

26    form.

27    Similarly, the ALJ's finding that Dr. Young's opinion was not supported because his

28    examination findings did not show weakness or atrophy in Plaintiff's lower extremities, is not a

1   legitimate reason for rejecting the limitation resulting from Plaintiff's obesity.  Indeed, Dr.

2   Young does not state that Plaintiff cannot walk at all, or even very little, when one would expect

3   to see findings of atrophy or weakness.  Rather, the impact of Plaintiff's obesity on his ability to

4   stand/walk requires the judgment of a medical professional familiar with the nature of obesity.

5   That Plaintiff may not show signs of weakness or atrophy does not call into question Dr. Young's

6   opinion as to the affects of Plaintiff's obesity, an impairment that causes its own set of

7   limitations.

8          Therefore, the Court finds that the ALJ's rejection of Dr. Young's opinion, in light of

9   treating physician Dr. Nguyen's similar findings, was not supported by substantial evidence.  The

10  Court's remedial actions will be discussed at the end of this opinion.

11  C.    Dr. Nguyen's Opinion

12         In a similar argument, Plaintiff contends that the ALJ erred in rejecting Dr. Nguyen's

13  August 5, 2002, opinion that Plaintiff could lift ten pounds frequently and occasionally,

14  stand/walk less than two hours in an eight hour day and sit for less than six hours.  AR 530-533.

15         The opinions of treating doctors should be given more weight than the opinions of

16  doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998);

17  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not

18  contradicted by another doctor, it may be rejected only for "clear and convincing" reasons

19  supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating

20  doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without

21  providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.*

22  (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out

23  a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

24  interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

25  Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own

26  interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849

27  F.2d 418, 421-22 (9th Cir.1988).

28

As a threshold matter, the Court finds that the ALJ's reasoning was proper as to the lifting and sitting limitations and therefore those limitations were properly rejected. The overwhelming majority of the evidence supported a finding that Plaintiff could lift ten pounds frequently, twenty pounds occasionally, and could sit for more than six hours. However, the ALJ's rejection of Dr. Nguyen's standing/walking limitations, which were the same as Dr. Young's standing/walking limitations, was unsupported for the reasons discussed below.

In assessing Dr. Nguyen's August 2002 statements, the ALJ gave them "limited weight" because the statements appeared to be "an accommodation to the claimant, since the onset of these limitations was shown as July 2000, well before the claimant began treatment at the Porterville Clinic." AR 619. The ALJ is correct that Plaintiff did not start seeing Dr. Nguyen until March 2002, when he was over 400 pounds and complained of pain in his lower legs. AR 861. However, the objective evidence upon which Dr. Nguyen based his findings existed long before he sought treatment. Dr. Nguyen cites tenderness and pain in Plaintiff's right hip since the age of 9 or 10. AR 530. He also cites the June 2002 x-ray that confirmed the impairment, showing a mild deformity of the right femoral head, compatible with avascular necrosis/Legg-Perthes disease, most likely chronic. AR 856. Therefore, the conclusion that Dr. Nguyen's limitations were an "accommodation" to Plaintiff is not supported by substantial evidence.

The ALJ also rejects Dr. Nguyen's opinions because they were "not supported by examination findings or by evidence that the claimant was prescribed more than minimal pain medications." AR 619. In Dr. Nguyen's assessment, he supports his postural limitations with (1) tenderness and pain in Plaintiff's right hip, since the age of 9 or 10; (2) low back pain; (3) Plaintiff's morbid obesity; and (4) his history of surgery in both knees. AR 530-533. Certainly, Plaintiff's obesity and his hip impairment, which were confirmed by an x-ray two months before Dr. Nguyen completed his assessment, support his limitations.

As to Plaintiff's pain medications, he was prescribed Tylenol with codeine, which he reported did not help, as well as Darvocet, a narcotic, for pain. AR 549-550, 858, 929. In fact, he was prescribed 100 mg of Darvocet, more than the minimal dose, for at least two years. AR

1  832, 834, 836, 839, 847, 929.  The Court disagrees with the ALJ's statement that Plaintiff's

2  medications were no "more than minimal pain medications."

3       The Court therefore finds that the ALJ's reasons for rejecting Dr. Nguyen's

4  standing/walking limitation set forth in his August 2002 assessment were not supported by

5  substantial evidence.

6  D.      Borderline Intellectual Functioning

7       Plaintiff next argues that the ALJ erred by finding that his borderline intellectual

8  functioning was not a severe impairment.  In support of his argument, Plaintiff cites his IQ scores

9  from 1999 and 2005, as well as Dr. Barnett's August 2001 report.

10      An impairment is severe if it significantly limits the physical or mental ability to perform

11 basic work activities.  20 C.F.R. § 404.1520(c).  Examples of basic work activities include

12 carrying out simple instructions, responding appropriately to usual work situations, dealing with

13 changes in a routine work setting, and performing ordinary physical functions like walking and

14 sitting.  20 C.F.R. § 404.1521(b).

15      In evaluating Plaintiff's mental impairment, the ALJ found that the weight of the

16 evidence did not support a finding that Plaintiff had the severe impairments of mental retardation

17 or borderline intellectual functioning.  AR 616.  The ALJ noted Plaintiff's unfinished education

18 and poor grades, his IQ scores, prison testing and academic scores in the range of sixth through

19 eighth grade.  AR 616.  However, the ALJ found that the weighted 2005 opinion of Dr.

20 Lessenger, who opined that Plaintiff did not have cognitive limitations that would prevent him

21 from performing unskilled work, resulted in a finding that his borderline intellectual functioning

22 was not a severe impairment.  AR 615.

23      In any event, whether Plaintiff's borderline intellectual functioning was a severe

24 impairment would not have changed the ALJ's RFC, as he was required to consider limitations

25 imposed by all of Plaintiff's impairments, even those that are not severe.  Here, the ALJ found

26 that Plaintiff was restricted to simple, repetitive tasks.  AR 616.

27      The ALJ's finding was supported by substantial evidence and free of legal error.

28

E.   SSR 96-9p

Plaintiff argues that the ALJ erred in failing to apply SSR 96-9p, which describes the implications of an RFC for less than a full range of sedentary work.  Plaintiff believes that pursuant to SSR 96-9p, the RFC finding that he cannot stoop necessitates a finding that he is disabled.

SSR 96-9p describes, among other things, the impact of postural limitations on a sedentary RFC.  With respect to stooping, it explains:

> A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

(emphasis in original).

Here, the ALJ found that Plaintiff was unable to climb, balance, kneel, crouch, crawl or stoop.  AR 616.  The ALJ used the assistance of the VE to determine what positions were available given Plaintiff's RFC, which included a complete inability to stoop.  The VE responded that Plaintiff could perform the positions of almond blancher, bench hand and final assembler. AR 994.  When asked about the impact of SSR 96-9p by Plaintiff's attorney, the VE explained that the Dictionary of Occupational Titles ("DOT") states that stooping is not necessary in any of the identified positions, "but the ruling . . . appear[s] to indicate that he cannot do any work." AR 996.

SSR 96-9p does not mandate a finding of disability where such limitations exist, but rather stresses the importance of a VE to evaluate available positions.  The ALJ consulted with the VE here, and he confirmed that the DOT was consistent with the positions he identified.  AR 996.  Although he testified that SSR 96-9p would indicate that Plaintiff could not do any work, he appears to misunderstand the ruling, which only suggests the use of a VE is situations where a claimant is limited to less than occasional stooping.  Pursuant to SSR 00-4p, the ALJ found that the VE's testimony was consistent with the information contained in the DOT based on his statement that stooping is not required for any of the identified positions.  AR 622.

1     Therefore, because SSR 96-9p does not mandate a finding of disability given Plaintiff's

2  inability to stoop and the identified positions did not require stooping, the ALJ's treatment of

3  SSR 96-9p was not legal error.

4  F.    <u>Dr. Barnett's Opinion</u>

5      Plaintiff argues that the ALJ erred by failing to adopt Dr. Barnett's August 23, 2001,

6  finding that Plaintiff was "mentally retarded with a poor education" and would struggle to work.

7  Opening Brief, at 23.

8     As explained above, the Commissioner must provide specific and legitimate reasons

9  supported by substantial evidence for rejecting the contradicted opinion of an examining

10  physician. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).  Dr. Barnett's opinion was

11  contradicted by Dr. Lessenger's 2005 opinion, where she found that Plaintiff, although

12  functioning in the low average range of intellectual ability, had no cognitive limitations to

13  performing work in an entry level position.  AR 879-880.

14     In adopting her opinion over that of Dr. Barnett, the ALJ explained that his opinions were

15  "based on a single interview and reflect an uncritical acceptance of the claimant's allegations."

16  AR 620.  The Court notes that both Dr. Barnett and Dr. Lessenger met with Plaintiff once, thus

17  negating the ALJ's rejection "based on a single interview."

18     Insofar as the ALJ believed that Dr. Barnett accepted Plaintiff's allegations without

19  question, it does appear that his social limitations were based soley on Plaintiff's statement that

20  he is afraid that people are trying to boss him around and wants to hit them. AR 526.  The

21  mental status examination tested only Plaintiff's mental functioning, not his social skills.  Indeed,

22  based on the mental status examination, Dr. Barnett found that Plaintiff would have no trouble

23  understanding, remembering and carrying out simple repetitive tasks.  AR 528.

24     Most importantly, the ALJ correctly found that a majority of the evidence supports Dr.

25  Lessenger's finding that Plaintiff could function in an entry level position, without social

26  limitations.  AR 879-880.  Specifically, State Agency physician Murillo twice found that Plaintiff

27  was capable of performing simple tasks with no social limitations.  AR 141-149, 896,898.  In her

28  most recent evaluation, dated March 29, 2005, Dr. Murillo specifically determined that Plaintiff

1    could also adapt and interact appropriately in a work environment when performing simple and

2    less complex tasks.  AR 896-898.

3         Accordingly, the ALJ's adoption of Dr. Lessenger's opinion was supported by substantial

4    evidence and free of legal error.

5    G.    VE Testimony

6         Plaintiff next argues that the ALJ erred in failing to adopt the VE testimony supported by

7    the record.  Insofar as he argues that the ALJ (1) erred by not adopting the question posed by his

8    attorney relating to SSR 96-9p; and (2) erred by not adopting the hypothetical that included Dr.

9    Barnett's limitations, both arguments are precluded by the Court's prior findings regarding these

10   issues.  Plaintiff further argues that, based on his belief that the ALJ improperly rejected Dr.

11   Nguyen's opinion, the ALJ should have adopted the hypothetical based on his limitations.

12        "Hypothetical questions posed to the vocational expert must set out all the limitations and

13   restrictions of the particular claimant . . . ."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988).

14   The testimony of a VE "is valuable only to the extent that it is supported by medical evidence."

15   *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982).  The VE's opinion about a claimant's

16   residual functional capacity has no evidentiary value if the assumptions in the hypothetical are

17   not supported by the record.  *Embrey*, 849 F.2d at 422.

18        As explained above, the Court determined that the ALJ erred in rejecting Dr. Nguyen's

19   stand/walk limitations.  It therefore follows that the hypothetical accepted by the ALJ, which did

20   not include Dr. Nguyen's stand/walk limitations, was not supported by the record.

21        Plaintiff urges the Court to accept the hypothetical that included *all* of Dr. Nguyen's

22   limitations, including a limitation to lifting ten pounds frequently and occasionally and a

23   limitation to sitting for less than six hours.  The VE testified that someone with these lifting and

24   sitting limitations, who was also limited to standing/walking for less than two hours, could not

25   perform any work.  AR 997.  Acceptance of this hypothetical would also be unsupported, as the

26   Court determined above that the ALJ properly rejected Dr. Nguyen's lifting and sitting

27   limitations.

28

1    Plaintiff's attorney proposed a similar hypothetical to the VE.  It included the

2    standing/walking limitations of Drs. Young and Nguyen and a proper lifting and sitting

3    limitation.[4]  Specifically, he asked the VE to assume that this person could lift ten pounds

4    frequently, twenty pounds occasionally, but could stand and walk less than two hours a day in

5    combination.  This person could sit for six hours but cannot stoop.  The VE testified that this

6    describes sedentary work.  AR 997.  However, based on an incorrect reading of SSR 96-9p, as

7    suggested by Plaintiff's attorney, the VE concluded that in light of SSR 96-9p, the complete

8    limitation in stooping would preclude work.  AR 997.

9    In addition to this inconsistency, the hypothetical does not include the additional

10   limitations properly included in the RFC- Plaintiff was limited to occasionally pushing and

11   pulling with his non-dominant left upper extremity, was unable to climb, balance, kneel, crouch,

12   crawl or stoop, and was limited to performing simple, repetitive tasks.  AR 616.  The record

13   therefore does not include a hypothetical Court is therefore without a VE response to a complete,

14   proper hypothetical.  This issue will be discussed at the end of this opinion.

15   E.    Credibility Determination

16       Finally, Plaintiff argues that the ALJ improperly determined that he wasn't credible.

17   The ALJ is required to make specific findings assessing the credibility of plaintiff's

18   subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  "An ALJ is

19   not 'required to believe every allegation of disabling pain' or other non-exertional impairment,"

20   *Orn v. Astrue*,495 F.3d 625, 635 (9th Cir. 2007) (citation omitted).  In rejecting the

21   complainant's testimony, "the ALJ must identify what testimony is not credible and what

22   evidence undermines the claimant's complaints."  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

23   1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.

24   1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

25   severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

26   with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

27

28       [4] Although the RFC allowed for eight hours of sitting, it is axiomatic that if the ability to sit for six hours
allowed for sedentary work, so too would the ability to sit for eight hours.

discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

_____Plaintiff testified that he thought he could lift five, maybe ten pounds, but could not do it for two to three hours a day. He thought he could stand five or ten minutes at a time, for a total of 30 to 40 minutes, and sit for about 30 to 40 minutes a time, for a total of a couple of hours. He also testified that he needed to lay down and take breaks twice during the day. AR 987.

In his decision, the ALJ first explains that Plaintiff's testimony that he wanted to be placed on a fire crew and did not have a lower bunk challenges his claims that he could sit for only 30-40 minutes total and stand/walk no more than 5-10 minutes at a time. AR 620. Indeed, Plaintiff describes his limitations as somewhat drastic. That Plaintiff wanted placement on a fire crew, and testified that while there were a variety of positions available, he would perform any position, gives pause to his testimony. His counselor told him he was ineligible, however, and ultimately, he did not apply. AR 990-991. The ALJ did not reconcile Plaintiff's belief that he could participate in fire camp with the ultimate decision that he was ineligible, yet it is reasonable to conclude that Plaintiff's belief in his abilities contradicts the testimony of his severe limitations.

Similarly, the ALJ disbelieves his sitting and stand/walk testimony because he did not have a lower bunk. Again, though, the ALJ did not discuss Plaintiff's testimony that he was trying to get moved to a lower bunk. AR 989. Had Plaintiff's description of his limitations not been so severe, the Court would question these reasons and the ALJ's failure to fully set forth and reconcile Plaintiff's testimony. However, given the severity of his description of his limitations, the Court finds that the ALJ was reasonable in concluding that these facts called

1    Plaintiff's testimony into question.  The ALJ may use "ordinary techniques" in addressing

2    credibility.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make

3    inferences "logically flowing from the evidence."  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir.

4    1996).

5         The ALJ next explains that Plaintiff was able to travel back and forth between Oklahoma

6    and California in 2004 and 2005.  AR 620-621.  The ALJ reasons that this "suggests a capacity

7    for sustained sitting and at least some walking and standing."  AR 621.  Plaintiff's travels

8    certainly suggest a greater capacity for sitting, and likely suggest a greater capacity for standing

9    and walking.  As the ALJ is the trier of fact and is responsible for credibility determinations, the

10   Court will not second guess this conclusion.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.

11   1982).

12        The ALJ then moves on to Plaintiff's criminal history.  He first explains that Plaintiff was

13   currently incarcerated for burglary, "an activity which usually requires some physical exertion."

14   AR 621.  He also notes that Plaintiff's general credibility is lessened by his felony convictions,

15   illegal drug use and non-existent work history.  Again, these are logical, proper conclusions.

16   *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

17        Finally, the ALJ questions Plaintiff's credibility based on his medications, which he

18   describes as only "anti-inflammatory medication for pain."  AR 621.  However, as the Court

19   discussed above, it does not agree with the ALJ's characterization of Plaintiff's pain medications.

20   Darvocet is a narcotic and Tylenol with codeine, while it may have anti-inflammatory properties,

21   is a pain medication as well.  The Court therefore finds that this reason is not supported by

22   substantial evidence.  Nonetheless, because the ALJ set forth numerous other reasons that have

23   been upheld, this error will not render the ALJ's credibility analysis insufficient.  *Batson v.

24   Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even

25   though one reason may have been in error).

26        Accordingly, in light of Plaintiff's severe description of his limitations, the Court finds

27   that the ALJ's credibility analysis was supported by substantial evidence and free of legal error.

28

1    **<u>REMEDY</u>**

2         The ALJ's main error in this action was his improper treatment of Dr. Nguyen's

3    stand/walk limitations.  The Ninth Circuit has repeatedly emphasized the importance of the

4    treating physician's opinion and the deference and weight to which it is entitled.  *Orn v.*

5    *Astrue,*495 F.3d 625 (9th Cir. 2007).  This is especially true in this instance, where Dr. Nguyen's

6    stand/walk limitations were also supported by the consultive examiner, Dr. Young.

7         This is also a case where the ALJ's error led to other errors, such as the acceptance of an

8    unsupported hypothetical and a finding that the number of positions identified by the VE was

9    significant.

10        Section 405(g) of Title 42 of the United States Code provides: "the court shall have the

11   power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

12   or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

13   In social security cases, the decision to remand to the Commissioner for further proceedings or

14   simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d

15   599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original

16   administrative proceedings, a social security case should be remanded.  Where, however, a

17   rehearing would simply delay receipt of benefits, reversal and an award of benefits is

18   appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859

19   F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no

20   useful purpose would be served by further administrative proceedings, or where the record has

21   been thoroughly developed.").

22        Here, no useful purpose would be served by further administrative proceedings.  This is

23   the second time this Court has reviewed Plaintiff's action, which alone suggests that an award of

24   benefits is proper.  The merits of this review also dictate an award of benefits.  Having found that

25   the ALJ should have used a more restrictive RFC, it is likely that a VE would find Plaintiff able

26   to perform less than 500 positions in the national economy.  Since 500 is not a significant

27   number, anything less would likewise be insufficient.  No additional evidence is necessary and

28   therefore further proceedings would serve no purpose.

1

## CONCLUSION

2      Based on the foregoing, the Court finds that the ALJ's decision is not supported by

3  substantial evidence and is therefore REVERSED and the case is REMANDED for the

4  PAYMENT OF BENEFITS.  The Clerk of this Court is DIRECTED to enter judgment in favor

5  of Plaintiff Clem Underwood and against Defendant Michael J. Astrue, Commissioner of Social

6  Security.

7      IT IS SO ORDERED.

8  **Dated:    February 25, 2009            /s/ Dennis L. Beck**
9                                      UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28